Charles Ritthaler, Administrator of the Estate of Frances Ritthaler, Appellee, v. City of Chicago, Appellant.

**Gen. No. 40,924.**

Heard in the second division of this court for the first district at the October term, 1939. Opinion filed February 23, 1940.

BARNET HODES, Corporation Counsel, for appellant.

ALEXANDER J. RESA and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

FINN & MILLER, of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal by defendant, City of Chicago, seeks to reverse a judgment for $7,500 entered against it upon the verdict of a jury in an action brought by plaintiff, Charles Ritthaler, administrator of the estate of Frances Ritthaler, deceased, for damages for her wrongful death, which it was alleged resulted from injuries sustained by her when an automobile in which she was a passenger struck a hole or holes in Vincennes avenue at or near Winston avenue in the City of Chicago.

At about 9:30 p. m., on November 22, 1936, Frances Ritthaler was a passenger in the automobile of one Reginald Weaire. At the intersection of Vincennes avenue and Winston avenue the automobile struck two holes in the street, throwing Mrs. Ritthaler from her seat and causing her to come down with great force. She was pregnant about five months at the time. Nothing unusual about her condition was noticed upon her arrival at home a few minutes later. The next day she started to bleed, and on November 27, 1936, "she began to hemorrhage." On December 4, 1936, she was taken to the hospital. December 8, 1936, she had a miscarriage and died the next day. The evidence also disclosed that she had been in good health, that she had been married for almost three years, that she was 29 years of age, that she was living with her husband at the home of her parents for two years preceding the date of the accident and that she left her surviving her husband, Charles Ritthaler, her father, Francis Worthley, her mother, Frances Worthley, and her brother, Virgil Worthley.

The only question presented is whether the judgment is excessive. Defendant's theory as stated in its brief is "that no pecuniary loss has been shown to have been suffered by the surviving husband and next of kin and that therefore, the verdict and judgment rendered in favor of plaintiff is grossly excessive and

should be reversed and set aside." Plaintiff insists that under the law and the evidence the judgment is not excessive and should be affirmed.

In its brief defendant states that "although it is well settled that as to lineal relations the law presumes pecuniary loss from the fact of death alone, yet the cases uniformly require that proof be introduced in evidence upon which the jury may base an estimate of damages," and then cites several cases (*Cleveland, C., C. & St. L. Ry. Co. v. Baddeley,* 52 Ill. App. 94; *Pittsburgh, C., C. & St. L. Ry. Co. v. O'Donnell,* 118 Ill. App. 335; *Rautman v. Chicago Consol. Traction Co.,* 156 Ill. App. 457), in which the evidence showed that the deceased wife was engaged in some remunerative occupation at the time of her death and the court held that the damages awarded to the surviving husband or next of kin were not excessive. There was no intimation in any of these cases that an award of substantial damages under circumstances such as exist here would be improper.

Section 2 of "An Act requiring compensation for causing death by wrongful act, neglect or default" (ch. 70, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 38.02]) provides, among other things, that "the jury may give such damages as they deem a fair and just compensation with reference to the pecuniary injuries resulting from such death." Defendant argues that plaintiff is obligated under the statute "to introduce at the trial evidence concerning the personal characteristics of the deceased, her prospects in life, her mental and physical capacity, and the amount of her earnings as proof of what she might in all probability earn and contribute to her husband and next of kin." In support of this argument defendant cites *City of Chicago v. Major,* 18 Ill. 349, where the court said at pp. 359, 360:

"The rule is correctly stated that the plaintiff's damages could only be estimated for the pecuniary loss suffered by the death of the deceased, without taking

into account the mental anguish or bereaved affections, and that the jury must make their estimate of such pecuniary damages from the facts proved, and that it was not necessary that any witness should have expressed an opinion of the amount of such pecuniary loss. In this, as in all other cases, it was proper for the jury to exercise their own judgment upon the facts in proof, by connecting them with their own knowledge and experience, which they are supposed to possess, in common with the generality of mankind.''

The language quoted can hardly be considered authority for any such rule as is urged in the foregoing argument of defendant, since in the *Major* case a judgment for the plaintiff was affirmed on a wrongful death claim when the only evidence introduced that might possibly have a bearing upon the question of damages was that the deceased was a boy three or four years old and that his parents were poor people. On the basis of this evidence alone the court did say in that case that ''it was proper for the jury to exercise their own judgment upon the facts in proof, by connecting them with their own knowledge and experience, which they are supposed to possess in common with the generality of mankind.''

In *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476, where the evidence showed that the deceased was a widow, 57 years of age, who was in good health, did her own housework, and kept a seven-room house in which there lived, in addition to herself an adult son and daughter and two roomers, in discussing the question of the damages that may be allowed in an action for wrongful death, the court said at pp. 482, 483: ''In every action of this character 'the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death.' (Hurd's Stat. chap. 70, sec. 2.) There is no rule by which the pecuniary loss can be exactly determined, and the jury must therefore

calculate the damages with reference to a reasonable expectation of benefit from the continuance of the life. These children might reasonably expect in many ways to derive pecuniary benefit from the continued life of the intestate. It is not required that the evidence shall afford data from which the extent of the pecuniary loss can be ascertained with certainty. Clearly, one of the elements of pecuniary loss is the personal service of deceased. (*Goddard v. Enzler,* 222 Ill. 462; *Baltimore and Ohio Southwestern Railway Co. v. Then,* 159 id. 535; *Illinois Central Railroad Co. v. Reardon,* 157 id. 372; *City of Chicago v. Keefe,* 114 id. 222.)"

In the instant case, as in most cases of this kind, the chief element of pecuniary loss is the personal service of the deceased. Since Mrs. Ritthaler did not happen to be keeping house on her own account at the time she was injured and since she was not engaged at that time in any remunerative occupation or business, all of the competent evidence available was presented at the trial. She was 29 years old and in good health. She was married, living with her husband at the home of her parents, and was in a pregnant condition. Surely the expectancy of service from her by her husband and by her parents was none the less because she did not happen to be employed or keeping house at the time of her death. "Some wives perform manual labor—others do not; yet the husbands of the latter no less than the former would certainly be entitled to compensation from wrong-doers for causing inability to perform service . . . there need be no direct or express evidence of the value of the wife's service, either by the day, week, month or any other period of time." *Metropolitan St. R. Co. v. Johnson,* 91 Ga. 466, 18 S. E. 816. The frugality, industry, usefulness and attention of a wife surely make her services greater than those of an ordinary servant, and therefore worth more. (*Filer v. Filer,* 301 Pa. 461.) In *Gainesville H. & W. Ry. Co. v. Lacy,* 86 Tex. 244,

24 S. W. 269, it was held that the term "service" by a wife did not fairly represent the dignity of the relation she occupied in the marital copartnership. In this connection the court said: "The wife's labor, while equally valuable to the community, does not command a price in the market, and therefore cannot be proved by experts, as can that of the husband."

In the comparatively recent case of *Cohen v. Shaykin,* 277 Ill. App. 613 (Abst.), in which certiorari was denied by the Supreme Court, a judgment for $10,000 for the wrongful death of a married woman was held to be not excessive. Since, as was said in *McFarlane v. Chicago City Ry. Co., supra,* "There is no rule by which the pecuniary loss can be exactly determined, and the jury must therefore calculate the damages with reference to a reasonable expectancy of benefit from the continuance of the life," and since there is no claim that the trial was unfair or that the jury was influenced by any improper motive, the verdict of the jury after its approval by the trial court should not be disturbed merely because of its amount.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

FRIEND, and SCANLAN, JJ., concur.